The Commissioners.
[After referring to the issue of the commission.]—From the evidence produced before the commissioners [which was by them annexed and referred to as part of their report], it appears that the prisoner, Beno Ville, is a Bavarian by birth, and now thirty-eight years of age; that he came to this-country some twenty years since, and that he is by occupation both a shoemaker and a shade painter That during nine years of this time he lived in Charleston, S. C., where he suffered at various times from that form of malarial fever known as congestive chills. That since his residence in New York, to which place he came in 1864, he has had modified returns of this disease, in so much as to exhibit a dimunition of mental power to such a degree that his wife refused to live with him, telling a friend that he was insane, and she felt unsafe near him. That he thereupon went to live with his sister, who, in like manner, after a while discovering something to be the matter with his mind, told him that he was not right, and that he ought to go to some hospital. That thereupon he went to the Bellevue Hospital, where he was admitted October 20, 1876, suf *197 fering from intermittent fever. That becoming delirious soon after, he was confined in the rooms assigned to persons mentally disordered, where he was seen and examined by Dr. David Breekes, physician to the city prison, whose official duty it is to determine upon the disposition to be made of such cases.
Dr. Breekes states, that believing the prisoner to be only temporarily insane from the delirium of fever, he did not order his removal to the lunatic asylum. The prisoner was discharged from the said hospital on October 25, 1876, as cured.
It is further in evidence, that on the night of October 26, 1876, being but one day after the discharge from the hospital of the prisoner, officer Edward H. Doyle of the 17th precinct police force, while passing up the Third avenue, between the hours of 3 and 4, A. M., perceived the odor of smoke, and following it until he arrived at No. 123, he saw the glare of a fire through the open door of the basement. That upon entering the place he saw a fire burning on the floor, and the prisoner sitting some ten feet distant on a box. That upon asking him who made the fire the prisoner said he did, for the purpose of warming himself. There was no furniture of any kind in the basement, nor did it appear to have been recently occupied ; nor was there any other person present. The officer thereupon arrested the prisoner, and handed him over to a person on the side-walk, while he went for assistance to extinguish the fire.
The prisoner, upon his examination, states that he hired the basement of the occupant of the premises, Frank Kauphold, and that he believed himself entitled to take possession on Saturday, October 25. That accordingly, being without any home, he proceeded to the said basement in the night of the 26th, about midnight, after having spent the evening at Mr. Yakle’s in'Twenty-sixth street. That after entering the prem *198 ises, the door not being locked, he lay down, and went to sleep, in which state he continued for about four hours. That upon waking he found himself in a chill and soon after in a fever such as had formerly attacked him. And he also states that a man, who he says accompanied. him when he entered the basement and slept there also with him, thereupon kindled a fire on two bricks and a stone close to the cellar wall, with pieces of pine boards which were lying about the floor.
It is the opinion of the commissioners that no person was in the basement with the prisoner, but that this was a delusion on his part, arising from the delirium accompanying the fever in which he woke. No one saw any man either enter or leave the basement' during the 'events narrated by the prisoner.
■ There is no evidence of any criminal motive on the part of the prisoner in kindling the fire. There was no furniture in the basement to be destroyed, and consequently no insurance upon it. Nor is there any evidence of malice entertained by him towards the landlord from whom he rented the premises. The whole transaction appears to have been the act of a mind devoid of any wrongful intention. The prisoner was evidently suffering from a modified form of delirium consequent upon the fever then prevailing in his system. He sought relief in the artificial heat of a fire, while keeping at a distance from it too great to be benefited by it, and thus showing that his mind was grasping at conclusions, without appreciating the relations between them.
The prisoner’s good character for truthfulness and thrift, is testified to by Mr. Unger, an acquaintance of ten years standing, and he also states that for several months preceding his arrest he had noticed a sensible change, for the worse, in his habits of cleanliness of eating, and of general deportment. Mr. Unger *199 thought him not right in his senses and was averse to his visiting his house, or coming to his table. Since the prisoner has been in the city prison, now some four months, he has been suffering from intermittent fever, and is still under treatment.
In view of all these facts, the commissioners are of opinion that the said Beno Ville, when he kindled the fire in the basement of No. 123 Third avenue, on the .morning of October 26, 1876, was not in a condition of mind to appreciate the consequences of the act he was committing; that such act was not in itself criminal, there being no evidence of wrongful intention coupled with it, and that he was at that time evidently laboring under the delirium of a fever, which in his then weakened condition, lowered his power of reasoning, and disqualified him pro tardo for correctly judging of transactions in which he was concerned.
The prisoner being at present in such a condition of enfeebled health, from the long effects of malarial fever as to render him liable to attacks of low delirium upon the supervention of any fresh congestive chill, and his past conduct at such times showing the tendency of his mind to acts of an irrational nature involving danger to himself and to others, and as he has no home or means of self-support, and is a proper subject for treatment in an hospital, the commissioners accordingly recommend that he be committed to the N. Y. city asylum for the insane on Ward’s Island, there to remain for observation and treatment until recovered and discharged according to law.
Ordered accordingly.